UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT BOURGEOIS II                                                CIVIL ACTION

VERSUS                                                             NO. 20-1002

HUNTINGTON INGALLS                                                 SECTION M (1)
INC., *ET AL*.

### ORDER & REASONS

Before the Court is a motion by plaintiff Robert Bourgeois II to remand this matter to the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC").[1] Defendants Huntington Ingalls Inc.[2] and Albert L. Bossier, Jr.[3] (collectively, "Avondale") respond in opposition,[4] and Bourgeois replies in further support of his motion.[5] Considering the parties' memoranda, the record, and the applicable law, the Court denies the motion to remand.

**I.   BACKGROUND**

This is a toxic tort case related to asbestos exposure. In February 2019, Bourgeois was diagnosed with malignant pleural mesothelioma.[6] On April 1, 2019, Bourgeois filed this action in the CDC alleging that his cancer was caused by exposure to asbestos.[7] In addition to Avondale, Bourgeois names as defendants Travelers Indemnity Company,[8] Conagra Grocery

---

[1] R. Doc. 11.
[2] Huntington Ingalls Inc. has had several past names including Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyards, Inc., and Avondale Marine Ways, Inc.
[3] Bossier was an executive officer of Huntington Ingalls. R. Doc. 1-2 at 1.
[4] R. Doc. 17.
[5] R. Doc. 21.
[6] R. Doc. 1-2 at 2.
[7] *Id.* at 1-2.
[8] Travelers is alleged to be the insurer of three former Avondale executive officers. R. Doc. 1-5 at 1.

Products Company LLC,[9] and several asbestos contractors, suppliers, manufacturers, and professional vendors (collectively, "asbestos supplier defendants").[10] Bourgeois alleges that he was exposed to injurious levels of asbestos fibers and dust during his employment at Avondale from May 1973 through January 1974 as a mail dispatcher.[11] He alleges that Avondale was negligent in failing to adopt adequate asbestos safety measures that would have prevented his injuries.[12] Bourgeois specifically excepts Avondale from the strict liability claims he raises against Conagra and the asbestos supplier defendants.[13]

On May 21, 2019, the defendants deposed Bourgeois.[14] He testified that from May 1973 through January 1974, he worked in Avondale's mail department delivering mail throughout Avondale's main yard, including to the shops and warehouses, such as the insulation and welding departments.[15] Bourgeois never boarded any vessels under construction.[16]

Ten months after Bourgeois's deposition, on March 25, 2020, Avondale removed the suit to this Court pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).[17] Avondale alleges that, during the time Bourgeois worked there, the majority of the vessels under construction were United States Navy destroyer escorts and LASH (lighter aboard ship) vessels

---

[9] Conagra Grocery Products Company, LLC has had several past names including Conagra Grocery Products Company, Hunt-Wesson, Inc, Beatrice/Hunt-Wesson, Inc., Beatrice Grocery Group, Inc, and Hunt-Wesson Foods, Inc. *Id.* Bourgeois alleges strict liability and negligence secondary-exposure claims against Conagra resulting from his step-father's work at Conagra's facility in Jefferson Parish, Louisiana, from 1968 through 1974. *Id.* at 3-8.

[10] The asbestos supplier defendants are CBS Corporation, Eagle, Inc., Hopeman Brothers, Inc., International Paper Company, Liberty Mutual Insurance Company as insurer of Wayne Manufacturing, McCarty Corporation, Taylor-Seidenbach, Inc., Cleaver-Brooks, Inc., Crane Co., Goulds Pumps, Inc., Ingersoll-Rand Company, Viking Pump, Inc., and Flowserve US Inc. *Id.* at 1-2.

[11] *Id.* at 3. Bourgeois also alleges exposure to asbestos at Avondale in 1978, but it is not at issue in this case due to Louisiana's workers' compensation laws. R. Doc. 11-3 at 9 n.1.

[12] R. Doc. 1-5 at 4 & 6.
[13] *Id.* at 5 & 7-8.
[14] R. Doc. 11-3 at 9.
[15] *Id.* at 8-9.
[16] *Id.* at 9.
[17] R. Doc. 1 at 1.

that were built pursuant to contracts with the United States Maritime Administration.[18]  It further alleges that both of these types of vessels were built under the detailed supervision and control of one or more officers of the United States that required the use of asbestos.[19]  Thus, Avondale reasons that, if Bourgeois were exposed to asbestos in its main yard from 1973 to 1974, the exposure must be attributable to work being performed on these two types of vessels under the direction of a federal officer, making his claim removable under § 1442(a)(1).[20]  As for the timing of the removal, Avondale alleges that the removal was filed within 30 days of the Fifth Circuit's February 24, 2020 *en banc* opinion in *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020), which it contends is an order for purposes of 28 U.S.C. § 1446(b) that made this action removable pursuant to *Green v. R.J. Reynolds Tobacco Co.*, 274 F3d 263 (5th Cir. 2001).[21]

## II.    PENDING MOTION

Bourgeois argues that this case should be remanded for four reasons.  First, he argues that the removal was untimely because Avondale learned of this case's potential removability when it received the transcript of Bourgeois's May 2019 deposition, but did not file its notice of removal until March 2020.[22]  Second, Bourgeois argues that the *en banc* opinion in *Latiolais* is not an order that made this case removable under § 1446(b) because the narrow exception articulated in *Green* does not apply.[23]  Third, Bourgeois argues that Avondale cannot establish the essential elements necessary for removal under § 1442(a)(1) because he did not work on any of the Navy

---

[18] R. Doc. 1 at 3.
[19] *Id.* at 3-4.
[20] *Id.* at 3-4 & 6-8.
[21] *Id.* at 4.
[22] R. Doc. 11-3 at 7 & 11-14.
[23] *Id.* at 7-8 & 15-22.

or LASH vessels, and there is no evidence connecting his asbestos exposure to those vessels.[24] Finally, he argues that Avondale does not have a colorable federal defense.[25]

Unsurprisingly, Avondale takes the opposite view on all of these points.  First, it argues that the removal was procedurally proper because it was filed within 30 days of the Fifth Circuit's *en banc* decision in *Latiolais*, which it contends constitutes an order that first made this action removable.[26]  Avondale argues that it had no obligation to remove this action earlier because it could not do so successfully under the pre-*Latiolais* Fifth Circuit jurisprudence which held that asbestos-exposure negligence claims were not removable under the Federal Officer Removal Statute.[27]  Thus, Avondale contends that its receipt of Bourgeois's deposition transcript did not start the 30-day removal clock.[28]  Further, Avondale argues that the *Green* exception applies to qualify the *Latiolais* decision as an order under § 1446(b) that made this action removable.[29]  Moreover, Avondale argues that all of the substantive elements of § 1442(a)(1) are satisfied because *Latiolois* takes a broad view of "relating to" as used in the statute, and the facts of the case show that Bourgeois's alleged asbestos exposure was necessarily related to work done at Avondale under the direction of a federal officer.[30]  Finally, Avondale argues that it has colorable federal defenses.[31]

---

[24] *Id.* at 8 & 22-27.
[25] *Id.* at 8 & 27-36.
[26] R. Doc. 17-2 at 18-28.
[27] *Id.* at 19-22.
[28] *Id.* at 22-23.
[29] *Id.* at 23-26.
[30] *Id.* at 28-34.
[31] *Id.* at 34-44.


### III.     LAW & ANALYSIS

Section 1442(a)(1) makes removable a civil action commenced in a state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office …." 28 U.S.C. § 1442(a)(1). The statute allows federal officers to remove to federal court cases "that ordinary federal question removal would not reach." *Latiolais*, 951 F.3d at 290. "In particular, section 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response." *Id.*

### A.     Timeliness

Removals under § 1442(a)(1) are subject to the time limits set forth in 28 U.S.C. § 1446(b). *See Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607 (5th Cir. 2018). Generally, a civil action must be removed within 30 days after the defendant receives a copy of the initial pleading "setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). However, if the case is not removable based on the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, ***order or other paper*** from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3) (emphasis added). "The information supporting removal in a copy of an amended pleading, motion, order or other paper … must be unequivocally clear and certain to start the time limit running." *Morgan*, 879 F.3d at 608-09 (internal quotation marks and citations

omitted). For example, the Fifth Circuit has held that "[s]ection 1446(b)(3)'s removal clock begins ticking upon receipt of the deposition transcript" said to constitute the "other paper," and not from the date of the oral deposition. *Id.* at 612.

Although a deposition transcript unquestionably constitutes "other paper," Avondale's receipt of Bourgeois's deposition transcript did not start the removal clock under § 1446(b)(3) because, in May or June 2019, it was not "unequivocally clear and certain" that the case had become removable. Prior to the Fifth Circuit's February 24, 2020 *en banc* opinion in *Latiolais*, a defendant removing a case under § 1442(a)(1) had to show "(1) it [was] a 'person' within the meaning of the statute, (2) it acted 'pursuant to a federal officer's directions,' and (3) it assert[ed] a 'colorable federal defense.'" *Latiolais*, 951 F.3d at 291 (quoting *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396-400 (5th Cir. 1998)). The court interpreted the second prong as requiring a "causal nexus" where the defendant had to show that it "acted pursuant to a federal officer's directions and that a causal nexus exist[ed] between the defendants' actions under color of federal office and the plaintiff's claims." *Id.* (quoting *Winters*, 149 F.3d at 398). With respect to the "causal nexus" test's application to asbestos cases, another section of this court explained the legal landscape as follows:

> Put simply, in the Fifth Circuit, the causal nexus element in [asbestos-exposure] cases is met when a plaintiff seeks to recover from a government contractor on a theory of strict liability but is absent when the theory of recovery is restricted to negligence. For strict liability claims that rest on the mere use of asbestos, a causal nexus is established because the government obligates the defendant to use the allegedly defective product that causes the plaintiff's harm. But asbestos claims alleging negligent failure to warn, train, or implement safety procedures do not give rise to federal jurisdiction when unrebutted evidence shows that the government did nothing to direct the shipyard's safety practices.

*Parfait v. Huntington Ingalls Inc.*, 2019 WL 4297912, at *4 (E.D. La. Sept. 11, 2019) (internal quotation marks and citations omitted).

Courts in the Fifth Circuit held fast to this interpretation of § 1442(a)(1) even after Congress amended the Federal Officer Removal Statute in 2011 by inserting the words "*or relating to*" before "any act under color of such office." Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(2), 125 Stat. 545, 545 (2011) (amending 28 U.S.C. § 1442(a)(1)) (emphasis added); *see Latiolais*, 951 F.3d at 291-92 (citing *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169, 172-75 (5th Cir. 2015); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462-66 (5th Cir. 2016); *Zeringue v. Crane Co.*, 846 F.3d 785, 793-94 (5th Cir. 2017); *Legendre v. Huntington Ingalls, Inc.*, 855 F.3d 398, 400-03 (5th Cir. 2018); *IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, L.L.C.*, 945 F.3d 232, 240 (5th Cir. 2019)). Accordingly, until the Fifth Circuit's February 24, 2020 *en banc* decision in *Latiolais*, the district courts within this district heeded the controlling law from that court and consistently held that asbestos-related negligence claims against Avondale did not satisfy the casual nexus test. *See Schexnayder v. Huntington Ingalls Inc.*, 2020 WL 114136, at *1-2 (E.D. La. Jan 10, 2020); *Parfait v. Huntington Ingalls Inc.*, 2019 WL 4297912, at *9 (E.D. La. Sept. 11, 2019); *Uzee v. Huntington Ingalls Inc.*, 2018 WL 4579827, at *1 (E.D. La. Sept. 25, 2018); *Brady v. Taylor Seidenbach, Inc.*, 2018 WL 3640873, at *1 (E.D. La. Aug. 1, 2018); *Brown v. Avondale Indus., Inc.*, 2018 WL 2932233, at *1 (E.D. La. June 12, 2018); *Latiolais v. Huntington Ingalls Inc.*, 2018 WL 2078607, at *4 (E.D. La. May 4, 2018), *aff'd,* 918 F.3d 406 (5th Cir. 2019), *vacated and remanded*, 951 F.3d 286 (5th Cir. 2020); *Guillot v. Avondale Indus. Inc.*, 2018 WL 1737573, at *3 (E.D. La. Apr. 11, 2018); *Burkart v. PPG Indus., Inc.*, 2018 WL 1737574, at *2 (E.D. La. Apr. 11, 2018); *Melancon v. Lamorak Ins. Co.*, 2018 WL 480823, at *6 (E.D. La. Jan. 19, 2018), *aff'd*, 742 F. App'x 833 (5th Cir. 2018); *Templet v. Avondale Indus., Inc.*, 274 F. Supp. 3d 469, 471 (E.D. La. 2017), *aff'd sub nom. Templet v. Huntington Ingalls, Inc.*, 720 F. App'x 726 (5th Cir. 2018); *Mayeaux v. Taylor-*

*Seidenbach, Inc.*, 2017 WL 3499242, at *1 (E.D. La. Aug. 15, 2017); *Blouin v. Huntington Ingalls Inc.*, 2017 WL 2628103, at *7 (E.D. La. June 19, 2017); *Legendre v. Huntington Ingalls Inc.*, 2017 WL 1458209, at *2 (E.D. La. Apr. 25, 2017), *aff'd*, 885 F.3d 398 (5th Cir. 2018); *Loupe v. Pennsylvania Gen. Ins. Co.*, 2016 WL 6803531, at *5-6 (E.D. La. Nov. 17, 2016); *Wilde v. Huntington Ingalls Inc.*, 2015 WL 2452350, at *5 (E.D. La. May 21, 2015), *denying stay pending appeal*, 616 F. App'x 710, 714 (5th Cir. 2015). Thus, not only was it not "unequivocally clear and certain" that this case was removable under the state of the law at the time Avondale received Bourgeois's deposition transcript, the case was clearly not removable. Had Avondale removed the case at that time, it surely would have been remanded.

Bourgeois's argument that Avondale should have removed the case after receiving his deposition transcript because it removed other cases around the same time is unavailing. Remands of cases removed under § 1442(a)(1) are appealable. 28 U.S.C. § 1447(d). To challenge the prevailing jurisprudence, Avondale was removing some cases like Bourgeois's though cognizant that remand and the need to appeal were certain. In these cases, including *Latiolais*, Avondale advocated that the 2011 amendment adding the words "relating to" to § 1442(a)(1) expanded federal-officer removal to include asbestos-related negligence claims, if the other conditions for such removal were met. *Latiolais*, 951 F.3d at 292. This was a non-frivolous argument, made in good faith, for a change in the law, but it was not necessary for Avondale to make the argument (especially via the expensive and cumbersome process of removal, remand, and appeal) in every one of its cases in order to preserve a right to removal if the then-established law were later changed. To hold otherwise would mandate the kind of protective removal the Fifth Circuit has plainly said is unnecessary. *See Morgan*, 879 F.3d at 610 (in holding that the removal clock begins on receipt of a deposition transcript, not the day of

the oral deposition, the court observed: "It promotes both the purpose of § 1446 and judicial economy to reduce protective removals by defendants and discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement.") (internal quotation marks and citations omitted). It also promotes both the purpose of § 1446 and judicial economy to reduce protective removals by defendants and discourage removals before their *legal* (no less than their factual) basis can be shown to be established by controlling law.

Bourgeois urges nonetheless that Avondale should have removed the case once it was on notice that some judges, even some panels, of the Fifth Circuit were beginning to question the long line of cases applying the causal nexus test to asbestos-related negligence cases. Indeed, in *Legendre*, the Fifth Circuit recognized that its § 1442(a)(1) precedent relied on the pre-2011 amendment version of the statute and that "[a] revised approach may have merit." 885 F.3d at 404. And the original panel in *Latiolais*, citing *Legendre* and cases from the Third and Fourth Circuits, recognized that the Fifth Circuit's interpretation of the statute was "out of step with Congress and [its] sister circuits." 918 F.3d at 412-13. Although certain judges and panels of the Fifth Circuit recognized that the court's interpretation of § 1442(a)(1) was questionable and should be revisited, there was no guarantee that the *en banc* court would eventually change it. Not even the grant of *en banc* review in *Latiolais* guaranteed this result. Thus, requiring Avondale to remove all cases that were not removable, but might become removable upon a successful appeal of the issue in the Fifth Circuit, would have resulted in multiple protective removals and a waste of judicial resources.

This case was removed within 30 days of the Fifth Circuit's February 24, 2020 *en banc* opinion in *Latiolais*. But Bourgeois contends that this *en banc* decision is not the kind of "order"

9

that can trigger the right to remove a previously unremovable case.  Section 1446(b)(3) permits removal within 30 days of the defendant's receipt of an "order … from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Decisions in unrelated cases usually do not constitute "orders" under § 1446(b)(3) and hence are "not to be grounds for removal."  *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 266 (5th Cir. 2001) (citations omitted).  However, in *Green*, the Fifth Circuit, relying on *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993), held that an order in another case can be an "order" for purposes of removing a case under § 1446(b)(3) when the two cases involve (1) the same defendants, (2) a similar factual situation, and (3) resolution of a similar legal issue that has the effect of making the case removable.  *Green*, 274 F.3d at 267-68.

This case fits within *Green*'s narrow exception.  As in this case, Avondale was a defendant in *Latiolais*.  Both cases involve negligence claims brought against Avondale for injuries allegedly caused by use of asbestos at the direction of a federal officer.  And, *Latiolais* resolved the legal question at issue here – the removability under the Federal Officer Removal Statute of cases involving asbestos-related negligence claims.  Thus, under *Green*, the *en banc* decision in *Latiolais* constitutes an "order" for purposes of removal under § 1446(b)(3).

Bourgeois attempts to distinguish *Green* by pointing out that the ultimately successful removal in that case was a *second* removal, whereas Avondale's removal here was its first in this case.  In effect, Bourgeois is asking this Court to read into *Green* a fourth requirement – namely, a prior removal and remand.  In doing so, Bourgeois relies on *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965 (8th Cir. 2007), where the Eighth Circuit, in choosing not to apply *Green* and *American Red Cross*, alluded to the procedural history that "[i]n both cases the defendant also had timely asserted [in a prior removal] the same basis for removal on which it later ultimately

succeeded." *Id*. at 970.  But *Dahl* cannot carry this water for two reasons.  First, a prior removal and remand was not material to the Eighth Circuit's holding in *Dahl* and does not effectively distinguish *Green* and *American Red Cross* from this case.  Instead, the decision in *Dahl* turned on the fact that the case from which the "order" issued involved completely different parties and addressed a question unrelated to the one barring removal at the onset of *Dahl* (*i.e.,* an amount in controversy below the jurisdictional threshold for diversity).

And, second, while the subsequent removal in *Green* and *American Red Cross* is not present in this case, a prior removal and remand is not necessary in cases where an "order" is said to render the case removable in the first instance.  In both *Green* and *American Red Cross*, the first removals were based on points of law that were not established by the controlling court in that jurisdiction.  *See Green*, 247 F.3d at 265-68 (the question of federal preemption of claims against tobacco manufacturers was not established in the Fifth Circuit until its decision in *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999)); *American Red Cross*, 14 F.3d at 198 (the question whether the "sue and be sued" provision in Red Cross's charter conferred federal jurisdiction over suits against it was not established in the Third Circuit until the Supreme Court's decision in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992)).  In other words, in those cases, there was no controlling law holding the cases to be nonremovable on the basis for removal later invoked, so the cases were not clearly nonremovable on this basis until they were removed and remanded the first time – with the basis for removal only then having been established as rejected.  Here, in contrast, there was a long line of controlling decisions of the Fifth Circuit establishing that a case like Bourgeois's was not removable until the *en banc* decision in *Latiolais*.  Thus, because a prior removal here was unnecessary to establish the non-removability of this case when it was first filed, and the *en banc* decision in *Latiolais* was the

11

"order" that first made this case removable under § 1446(b)(3), Avondale's removal of this case was timely.

### B.  Substantive Elements

"[T]o remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296.  Courts are to give a broad interpretation to § 1442(a).  *Id.* at 290-91 (citations omitted).  Thus, motions to remand cases removed under the statute are weighed "without a thumb on the remand side of the scale." *Morgan*, 879 F.3d at 607.  The Fifth Circuit has held that Avondale is a "person" within the meaning of the statute and that its federal contract with the Navy satisfies the third prong. *Latiolais*, 951 F.3d at 291.  The Court now turns to the remaining two elements for federal-officer removal.

### 1.  The Connection or Association Prong

After the 2011 amendment, "section 1442(a)(1) makes removable to federal court 'a civil action … that is against or directed to … any person acting under a federal officer … ***for or relating to*** any act under color of such office.'" *Id.* at 292 (quoting 28 U.S.C. § 1442(a)(1)) (emphasis added; brackets omitted).  In *Latiolais* the Fifth Circuit recognized that the statute "plainly expresses that a civil action *relating to* an act under color of federal office may be removed (if the other statutory requirements are met)." *Id.* (emphasis in original).  And, the court explained that the Supreme Court has recognized, "the ordinary meaning of the words 'relating to' is a broad one – 'to stand in some relation; to have bearing or concern; to pertain;

refer; to bring into association with or connection with.'" *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)) (brackets omitted).

From 1973 to 1974, Bourgeois worked at Avondale as a mail dispatcher.[32] He testified at his deposition that all day long he went "all over" the Avondale shipyard, including into various shops and warehouses.[33] Bourgeois testified that some of the shops were dusty and that he could have gone into shops where asbestos was used, such as the insulation and pipefitting shops where asbestos-containing materials were prepared before being sent to the vessels.[34]

Avondale was building 26 ships during Bourgeois's short tenure.[35] Six of those vessels were U.S. Navy destroyer escorts for which the government required the use of asbestos insulation and gaskets.[36] Although there is no evidence that Bourgeois set foot *on* a Navy vessel, he alleges that he was exposed to asbestos while delivering mail all over the Avondale shipyard including areas where asbestos destined for those vessels was used and prepared. Bourgeois alleges that Avondale was negligent for failing to warn him of the dangers of asbestos and for failing to provide safety instructions.[37] Under the broad reading of "relating to" *Latiolais* dictates, Bourgeois's allegations and testimony, coupled with the evidence that six Navy vessels were under construction while Bourgeois worked at Avondale, tend to show that Bourgeois was likely exposed to asbestos used under the direction of a federal officer, thereby satisfying the connection prong.

---

[32] R. Doc. 1-2 at 3.
[33] R. Doc. 17-1 at 24-26.
[34] *Id.* at 13-18, 24-28 & 75-76.
[35] R. Doc. 17-6 at 60-68.
[36] *Id.*; R. Doc. 17-7 at 10-14. The parties dispute whether the LASH vessels were built at the direction of federal officers or private parties. There is no need to resolve this dispute because the Court finds that Bourgeois's potential exposure to asbestos required for the Navy vessels is sufficient to satisfy the "relating to" requirement.
[37] R. Doc. 1-5 at 6.

## 2. The Colorable Federal Defense Prong

In *Latiolais*, the court explained:

> To be colorable, the asserted federal defense need not be clearly sustainable, as section 1442 does not require a federal official or person acting under him to win his case before he can have it removed. Instead, an asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous. Certainly, if a defense is plausible, it is colorable.

951 F.3d at 296-97 (internal quotation marks and citation omitted).

Avondale raises the government contractor immunity defense under *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).[38] Avondale raised the same defense in *Latiolais*, and the court explained it as follows:

> This defense extends to federal contractors an immunity enjoyed by the federal government in the performance of discretionary actions. Accordingly, federal contractors are not liable for design defects if (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. Furthermore, the government contractor defense does not necessarily apply only to claims labeled design defect. Instead, whether it will apply to a particular claim depends *only* upon whether *Boyle*'s three conditions are met with respect to the *particular product feature* upon which the claim is based.

*Latiolais*, 951 F.3d at 297 (internal quotation marks and citations omitted) (emphasis in original).

Applying these principles, the court in *Latiolais* found that Avondale raised a colorable *Boyle* defense where it provided an "affidavit and deposition testimony alleging that the Navy required installation of asbestos on [one of its vessels], as well as another affidavit alleging that the Navy generally required Avondale to install asbestos and to comply with certain related

---

[38] R. Doc. 1 at 9. Avondale also raises the derivative sovereign immunity defense under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940). Because one federal defense is sufficient under § 1442(a)(1), it is unnecessary to address Avondale's *Yearsley* defense. Avondale has withdrawn its Longshore and Harbor Workers' Compensation Act defense. R. Doc. 17 at 34 n.166.

safety practices." *Id.* Further, the court viewed Avondale's evidence as supporting "that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures," and "[f]rom such evidence, it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know." *Id.* at 298. The Fifth Circuit concluded that this evidence demonstrated that "Avondale's assertion of a federal defense is not wholly insubstantial and frivolous." *Id.*

Avondale provided similar evidence in this case.[39] Thus, as in *Latiolais*, Avondale has stated a colorable federal defense here. Therefore, Avondale has satisfied all of the substantive requirements of the Federal Officer Removal Statute.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Bourgeois's motion to remand (R. Doc. 11) is DENIED.

New Orleans, Louisiana, this 14th day of May, 2020.

　　　　　　　　　　　　　　　　　　　　　　　BARRY W. ASHE
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[39] *See* R. Docs. 17-7 through 17-26.